Good morning, Your Honors. May it please the Court, my name is Tim Scott for the appellant Michael Lustig. I'm going to endeavor to save two minutes for a rebuttal. Your Honors, officers conducted a warrantless search and an admittedly unconstitutional search of Mr. Lustig's cell phone, but the district court declined to apply the exclusionary rule holding that the good faith exception applied. The first problem with that holding is that it conflicts with this court's precedent in United States v. Camus. The facts in Camus were that agents searched a cell phone, again without a warrant, an hour and 20 minutes after the accident. But that was in a car instead of on the person, right? Doesn't that make a big difference? Well, that was one of the exceptions that they looked at, was the vehicle exception. But this court also sort of ticked through the other exceptions, search incident to arrest, exigency. So it did squarely hold that the search incident to arrest exception didn't apply, which is the same exception the government is looking to here. But perhaps more importantly, its analysis of the good faith exception is what I think controls here. The court held that when it is the person who commits the constitutional error, so to speak, the constitutional wrongdoer, not in a pejorative sense, but just in the sense of the person who erred, this court has never held that that person is the one who can take benefit or take refuge in the good faith exception. The court explained that negligence or constitutional error and objective reasonableness are mutually exclusive. And so the facts there was that it was an hour and 20 minute search after arrest. So certainly four days after arrest, which is the facts of this case, seems to be resolved by the Camus case. And it seems to be a square holding. Could I ask you if we so we have the two issues, we've got the pocket phones and the car phones and the government seems to have conceded that there was an error with the car phones. If we agree with you that we that there needs to be a determination about what the fruit of the car phone searches is, do we even get to the pocket phone issues or do we need to figure out first what the fruit of the car phone searches is and figure out whether we even need to reach this Riley issue? Well, if I guess looking at it from the other side, if the court resolves the pocket phones in Mr Lustig's favor, and I think the government concedes this, then that resolves the entire case. If if the pocket phones were constitutional, then the whole case goes out. If the question is whether there is a taint from the from the car phones, then I would submit either the court needs to just find it on the record that it was too intertwined. The government can't show harmlessness or at a minimum it needs to remand. I would imagine that the court does need to to reach the Riley issue because again, that would be dispositive of the whole case. We could send it back for a remand on the second issue, but that would still leave the first issue unanswered. And I think the district court needs guidance on whether good faith would you agree that in the event of a remand that does not trigger, you know, ipso facto, you're being able to withdraw your guilty plea? Your client being able to withdraw his guilty plea? Well, under the rule, it's somewhat ambiguous, but I think it's pretty clear that what that rule means is that if on the merits of the issue, it's reversal by the Court of Appeals. Yeah, I think that the court should should embrace the Mejia rule, which which appears to be when there's a conditional plea. If there's a reversal, then they do have the opportunity to withdraw the plea that that seems to be the benefit of the bargain. You know, there was a closed record that that was sort of the party's negotiating posture that that was the plea. Well, shouldn't the district judge make a determination as to whether or not the bargaining position issue cause the guilty plea? I'm sorry. What isn't necessary that the district court make a finding as to whether or not the difference in bargaining position cause the entry of the guilty plea? At a minimum, at a minimum, there would need to be a finding by the district court, yes. The government's argument boils down to the argument that the officers or the agents, and this is both for the first phones and the second phones, were relying on binding precedent. Even if one were to attenuation type of good faith argument. Aren't you asking the officers to be clairvoyant? The Supreme Court hadn't ruled yet. We're not. We're asking the officers to honor the warrant requirement when the law is unsettled. Now, if there was, in fact, binding precedent, then we would then that would be a better argument that we're asking officers to anticipate an overruling of existing precedent. But that's not the situation we have here. What does It ought to be either Supreme Court precedent. Right, but so we have Robinson. That's Supreme Court precedent. Right. And Robinson is not binding because Robinson doesn't hold that a cell phone is a closed container. Right, but it couldn't because it didn't even exist at the time of Robinson. So, I mean, can you articulate any kind of line about how similar to the facts something needs to be to create a reasonable reliance? I think it would need to be. I mean, binding precedent is factually similar from a court that has jurisdiction. The question is whether Robinson was binding precedent relies on the premise that a cell phone is a closed container first and that it can properly be searched incident to arrest. I don't think that we can fairly say that Robinson was binding precedent because it obviously it didn't hold that like the court pointed out that a cell phone is a closed container. In fact, we did have some guidance from the Supreme Court on what a closed container is. The Bellman case defined a closed container as an object capable of holding other objects. Whether a cell phone fits within that, I think that the Supreme Court in Riley said it best. They called it a strained analogy to begin with. But then it went on to say that that cell phones, it's significant that they use the word analogy because that is at best what Robinson was. It was a litigation position. It was an argument. It was an analogy. The Supreme Court didn't think it was a particularly apt analogy. And it's telling, I think, that the Supreme Court didn't say words to the effect of we overrule Robinson or we circumscribe Robinson or we limit it to the facts of that case. Well, counsel, can I ask you to address the government's reliance on the California Supreme Court's decision in Diaz? Because I guess I found their use of that case persuasive in this sense. Certainly, a majority of the California Supreme Court justices, much more learned in the law than any officer on the street, no doubt, they felt that they were bound by then existing Supreme Court precedent and that they could not, they were powerless to go beyond it in the way that Riley ultimately came out. If those presumably reasonable people came to that view of the law, how can we fault an officer for not anticipating that Riley would come along later as well? The first answer to that question, your honor, is that these were cross-designated federal officers. They weren't acting as state agents under state law. Stop right there. Stop right there because that's the exact same mistake I think you made in your brief. I'm not saying that the California Supreme Court's decision was binding in some sense. I'm saying that if we're trying to figure out whether a reasonable officer looking at the state of existing Supreme Court precedent pre-Riley could or should have anticipated that not getting a warrant was going to be unconstitutional, it seems to me a nice comparison point are the justices of the California Supreme Court. They, obviously looking at the exact same body of law, came to the conclusion that, it seems to me, dooms your position here. I want to hear your response to that. Forget about whether the California Supreme Court's decision was binding in some relevant sense. Just on the point that, in the sense that I've talked about it. If we set aside whether or not it's binding and assuming it's not, there are cases on And the question becomes, can a reasonable officer ignore a federal district court in the Northern District of California? And can that same officer ignore the district court in Florida or the First Circuit? The First Circuit decision didn't exist yet. It did. It came out later. But the Ohio Supreme Court went the other way. There's a district court in Oregon that I think may have been also slightly afterwards. But the point is, there was authority on both sides of this issue. There was also statutory authority, both under state and federal law. It's significant, I would submit, that these same quote-unquote reasonable officers literally could not have gotten a search warrant from a judge under Penal Code Section 1524 in California, based on the misdemeanor nature of this offense. And so it seems somewhat incongruent that officers acting in purported good faith could do warrantlessly what California statute prohibited them from doing through a neutral judge. And the same thing is true statutorily on the federal side of the fence. Title III in this Court Smith case suggests, if not holds. I'm sorry. Let me just hear you articulate in a nice, concise way the legal principle that you want us to announce in, let's say if we were to publish an opinion in this case ruling in your favor, what does the state of the law have to be in order for the good faith exception to either apply or not apply? Let me just hear you articulate that. Yes, Your Honor. When the state of the law is unsettled as to an exception to the warrant requirement, then the rule remains. Does one district court opinion anywhere in the country make the law unsettled on an issue? From Baltimore, yes. I think what makes it unsettled is that there's no binding Ninth Circuit and no binding Supreme Court precedent. But what if you think there was binding Supreme Court precedent and the only reason it's unsettled is because people start to disagree that Robinson applies? Well, I think that makes it unsettled if it's not. Right, so say there's one, Baltimore, of course, would be correct, but what if there's one district court in wherever, one district court in Florida, says we don't think this actually applies to cell phones, even though everyone else in the country has been assuming that Robinson does? Is the law now unsettled because of one district court case across the country? Well, I wouldn't even have to rely on one case going the other way. As long as there is an absence of a case holding that it is squarely within this exception, then the exception doesn't apply, the rule applies. I think what we're trying to do is set up a situation where officers are following bright-line rules, not guessing at an evolution of the law. I mean, that makes police training completely untenable, right? Because you would need a case exactly factually in every scenario for anyone to ever know what they can do. It has to be that police officers can be trained, in general you can search people's pockets or in general you can do this or not. And so I don't understand how it's workable to say that unless there's a case directly on point, you can never follow the general rule that seems to exist. Well, it is workable and the workable rule is what the Fourth Amendment says, that people have a privacy right in their persons, their objects, their possessions. I think the word unreasonable appears in the Fourth Amendment. Right, and so the warrant requirement is the rule. And so if the exception is unsettled as it is here, then the rule applies. And the rule is that you need a warrant if you want to search somebody's phone. See, there will always be the next case. There will always be the next piece of technology or the next intersection of society and technology. And the question will be, do we mean what we say when we say that there's a preference? How is there ever a good faith exception under your reading of how clear the law needs to be? Well, it's exactly what Davis says, that there needs to be binding appellate precedent, binding. In the Davis case, it was that Belton spelled out exactly what the search was. That ended up being overruled. But our court has never said that the good faith exception needs to be exactly factually on point. I mean, we've got the GPS cases where there is other kind of monitoring. We said, okay, it's good faith to have GPSes. I mean, we extend things a bit, right? I mean, that's how I think to do what you're saying, we would be conflicting with prior Ninth Circuit precedent, wouldn't we? Well, I think the opposite. I think if we were to say that officers acting in an area of the law that is unsettled, that there is no case on all fours, I think that would be getting way out ahead of Davis. I think it would be getting way out ahead of other circuits. No other court, to my knowledge, has held that when the law is unsettled in a circuit, that the good faith exception applies. Davis is a narrow holding. Justice Sotomayor's concurrence makes that even more plain. This is a very specific fact pattern of complying to the letter with patrolling precedent. And in the absence of that precedent, the warrant rule complies. Okay, we've taken you over your time. I'll give you a little bit of time for rebuttal, but let's hear from the government. Thank you. Good morning, Your Honors, and may it please the Court. Helen Hong on behalf of the United States. Judge Freeland, I do want to hit right where you left off, which is what constitutes binding appellate precedent. And you're absolutely correct that the Ninth Circuit has already answered that question in the GPS context. I think you were referring or alluding to United States v. Thomas, the Ninth Circuit case from 2013. I didn't cite it in my brief, but having reviewed the reply, did a little bit of additional research to look for what the Ninth Circuit determined binding appellate precedent to be. And in Thomas, the Ninth Circuit held that authoritative guidance from the Supreme Court that allows a particular action constitutes binding appellate precedent. And that's precisely what Robinson was here. Robinson identified a bright-line rule that was sort of the utility of what Robinson professed to provide, which is that officers have the unqualified authority to search incident to arrest so long as that item was seized from that person. Later on, we have Chadwick that comes and puts a gloss on it, and I think this addresses another question that Your Honor asked Judge Friedland, which is the distinction that Camus has in terms of its facts, which is that the item wasn't seized from the person but was seized from the bed of the vehicle. And Mr. Coleman, I don't think, had the facts entirely correct. The court did analyze whether the good-faith exception applied to the search incident to the arrest that was within the immediate control of the person who was arrested. For that reason, Camus could easily reject the good-faith of the officers because the law was clear that a search of an object seized from a person within its immediate control had to be contemporaneous, and an hour and 20 minutes was not contemporaneous. That's not the case here. What we have here is an item that was taken, two cell phones from Mr. Lustig's pants pockets. Aside from Thomas, we have a case that was cited by Mr. Lustig in his opening brief on page 15, United States v. Sparks. It's a First Circuit recitation of what binding appellate precedent is. There it was in the GPS context, and they defined binding appellate precedent as clear or well-settled law. There, there was not First Circuit case law that blessed GPS tracking of vehicles, but the First Circuit nonetheless found that the Supreme Court's recitation in Knotts and Caro provided the answer. The Fourth Circuit, which Knotts is an esteemed circuit, the Second Circuit and the Third Circuits have all found the same, which is even if there isn't a binding appellate precedent within the meaning of Mr. Coleman's briefing, meaning a case on point from that circuit, that Supreme Court authority could provide the authority for officers to objectively and reasonably rely on the law. Can I ask you the question I started with him with, which is, we have this car phone problem that I think you have conceded, at least there was a problem with the searches of the car phones. Let me ask, do you often concede on appeal, but you didn't argue in the district court? That makes it a little tougher for district judges. I agree, Your Honor. It's regrettable that we did not flesh out the Sullivan, Mitchell, and Doss issue below, and I don't mean to make any excuses. It was raised in a motion for reconsideration. It wasn't something that was really developed before the district court. With the benefit of hindsight, had we looked at this again, I think we'd come to the same result, which is that we have some problems with the 16-mile line. A proper concession is a proper concession. But so now, I mean, now that we have that concession, I'm struggling with how we at the appellate level, when the record hasn't really been developed on this, can actually figure out what the fruit of those searches was. And if we need to remand for that, do we even get to the pocket phone issue until we've figured out what the fruit of the car phone searches is? I guess I have two responses to that. On the fruit question, that really goes to the harmlessness question. Because here, I think that understanding that the inventory phones were improperly searched, the question is, is Mr. Lustig entitled to a remedy? If there was fruit that infected other evidence that goes to the counts of his plea, then obviously we could not rely on the harmlessness argument. I do want to quickly address that I disagree that the automatic reversal rule is appropriate here. I know Mejia in footnote 8 suggests that it is an automatic reversal rule, but Mejia itself looked at prejudice. The extensive discussion in Mejia was whether the defendant had suffered prejudice because of the absence of… So it seems like you want the prejudice rule, though, to be the evidence has to actually support the count of conviction. And why shouldn't it be the Tenth Circuit rule and other circuits' rule that you look at whether the plea bargain still would have happened, whether it would have affected the bargaining and his decision to plead guilty? And that's because the Ninth Circuit hasn't adopted that rule. So why shouldn't we do that today? Yeah, or it hasn't at least clearly. If you look at some… No, no, I agree with you. I don't think we have. But we now are faced with a case where it might actually matter, and doesn't that rule make a lot of sense? Do you have any reason why we shouldn't adopt that rule? I think, you know, it gets into the subjective intentions and the mind of the defendant at the time that the plea is taken. If you look at Sedeno-Arellano, for example, that's the dog canine discovery case. It was a conditional plea where the defendant was permitted to appeal the denial of dog discovery, the canine discovery, training discovery. And the court found that it was harmless. You can imagine a situation where a defendant, although it wouldn't in the objective sense impact any of the evidence in the case, would feel strongly about some issue that it would truly impact the decision. And, I mean, a district court judge could make an assessment that something is so tangential. But when here we had, you know, there are, I think, two counts in the indictment. He ends up pleading guilty to only one. But when there are two counts in the indictment, you have to expect that maybe the fact that there were two made a difference. And if the evidence of one of them, even if it's not the one he pled guilty to, goes away, and maybe it even affects the other one, we don't know. I mean, certainly if it affects the other one, then the whole thing clearly goes away. But even if it affects only the other one that he didn't plead guilty to, I mean, that's a difference, right, in the bargaining. I agree, Your Honor. And I think that even if you look at it within the rubric of whether it was harmless beyond a reasonable doubt, the language that was used in signs by this court, for example, I acknowledge that it's tough for the United States to prove in the conditional plea context that it didn't matter. Here, you know, I would just note that the United States made a representation that it would self-suppress, sort of handicapping what the issue would be on the second set of inventory phones. That's at ER 12. The district judge crediting that representation found that the motion for reconsideration would be moot. The plea was to counts that solely derived from and really were only about the false . . . But we really don't know that. I mean, in your role, I'm not going to submit any connection with sentencing. I mean, there's no credibility finding by a district judge. On the fruits analysis, that's correct, Your Honor. That was never tested below. I would just submit that it's sort of indisputable in light of the type of facts that have been alleged. I'm not sure what Mr. Lustig could produce that would suggest that anything different had occurred. But I agree it was not subject to advertarial. Why put the district judge in the position of figuring out what Mr. Lustig would have done? Assuming on the rally issue we agree with you, why don't we just reverse and let Mr. Lustig make up his own mind? I mean, there are risks of not pleading on it. I actually think that that's probably the better workable rule, which is if there is an error and the United States has not been able to establish and prove its burden, that it was harmless beyond a reasonable doubt, it's not incumbent upon the district judge to then make a harmlessness determination. It's simply the United States has failed to shoulder its burden, so the defendant gets the benefit and is permitted to withdraw if he elects to. So don't we need to remand here at least for a determination of what the fruit was of the car phone searches? Well, if the court finds that it was not harmless beyond a reasonable doubt or at least the United States has not proved that because there's a fruit issue, I don't know that the district court needs to make that fruit finding to determine whether the defendant is permitted to withdraw from the appeal. I think it just goes back. Well, that's interesting. I thought maybe you should have a chance to show that really there is no fruit here that's significant, and then we could figure out whether, okay, that means this is harmless. But, I mean, if I have to decide it today, I don't think we can be confident at all that this evidence was okay. And if that is the case, then I think the United States would acknowledge that we have not shouldered our burden to prove beyond a reasonable doubt that that is in here. So you think we ought to apply a – I just want to make sure I understand. I don't mean to be argumentative. You think we ought to apply a standard which is more adverse to the government than the Tenth Circuit standard? No, it's not more adverse. The question is who is making that determination. So I think the proposal would be that if this court can't determine, then the district court gets a shot to figure it out. And that's not how I think that the conditional plea is structured. If the United States fails to establish its burden that the error was harmless beyond a reasonable doubt, I think it goes back to the district court. Whether the district court determines it's harmless or not, I don't think it's part of the inquiry. It's the inquiry that's before this court. So we would need – you would have us vacate the plea instead of leaving it to the district court to decide whether to vacate the plea at that point? Well, it would be remanded to allow the defendant to make the election as to whether he would like to vacate the plea. I see. Thank you. That's right. Which then I think anchors us to the first set of phones and why this, again, addresses your question, Judge Freeland, of whether you even need to address the pocket phone issue. If this is remanded, obviously the landscape of what evidence comes in against the defendant will impact his decision on whether to plead guilty or to withdraw from the plea or not. I see that I'm out of time. That's okay. Please keep going. It's helpful. But I think that for that reason, a determination by this court about the lawfulness of the pocket phones makes sense. I know in the sentencing context, for example, if there are multiple issues and one is dispositive of the sentence, the court can nonetheless, in its discretion, reach the other issues because it's likely to recur. I think that's the situation here. We know that when we go back, the validity of the search of the pocket phones is going to be an issue. That probably is right because he won't know whether to withdraw his plea until he knows whether the pocket phone evidence, at least in part, whether that comes in. But won't he need to have a fruit determination also before he decides whether to withdraw his plea? I mean, it seems like we have the legal question about the Riley issue in good faith. Maybe he needs to have that information, but he may also need a determination about what the fruit of the car phone searches is. And I think that's the sort of weighing that defendants often have to make. Mr. Lustig, having prevailed before the Court of Appeals, now gets to talk to his attorneys and handicap what he thinks his chances are on the fruit analysis. I don't think that the district court needs to do the fruit analysis in order to give Mr. Riley the complete landscape of whether the plea is appropriate or not. But because this first issue, the pocket phone issue, was something that was specifically identified as an issue that he could appeal, I think it would be useful for the court to provide guidance to the district court as to whether those pocket phones come in evidence or not. What's the maximum penalty on the state court charge originally against Mr. Lustig? Do you know? It was a six-month misdemeanor, Your Honor, the 647B, the solicitation of prostitution. He was originally charged in a two-count indictment, charging 15-year mandatory minimums. So the minor issue really is critical, not only to sentencing but also to the charge. Right. Well, and I should note the state charge he was arrested on had nothing to do with the minors. The state charge had to do with solicitation of prostitution. And you learned the minor thing only through the search of the cell phones? Yes, Your Honor. Can I ask before you sit down, counsel, can you just give us the site for the Thomas case? I don't have that handy. The GPS good faith case that you mentioned at the outset? Yes, Your Honor, and I'm happy to provide this in a 28-J letter if the court would like as well. Just the site? Sure, it's 726 F. 3rd, 1086. It's a Ninth Circuit case out of 2013. It's Judge O'Scanlan who was analyzing the impact of Jones and Hardeen's on a dog sniff of a toolbox in the bed of a truck. Okay, great. Thank you. Thank you, Your Honor. Let's give you, can we do a minute and a half or do I have to do whole minutes? How about a minute and a half for rebuttal? I'm talking, Your Honor. Fair enough. Thank you, Your Honor. Quickly, the reason that this is different, that Robinson wasn't finding, in addition to the factual distinguishing factors, is the statutory distinguishing factors. We didn't have to guess that cell phones were different than other objects or to reject that container analogy. Title III and the Stored Electronic Communications Act says that you have to get a court order to look at those kinds of things. That's what Title III says. Did you make that argument below? We made it, I think, in the motion to reconsider, and we certainly made it in the briefs. So to say that the government could rely or that an officer could rely on Robinson where there is statutory authority telling them explicitly the Smith case, Title III, and then again California Penal Code Section 1524, which says you can't search these things without a warrant, I think distinguishes it. And then very quickly, intentionality distinguishes this case as well. Let's not lose sight of the fact that these are officers who as a team set out and embarked on a sting operation proactively in a premeditated way and didn't just err in violating the Constitution and searching the cell phones, but by the government's own admission erroneously used the community caretaking function on multiple cars for multiple suspects that day. So illegally towed cars, illegally did inventory searches that were pretexts for constitutional violations, and all of these things every step of the way were Fourth Amendment violations up to and including the search warrant that they got 15 months after the fact, which is also an admitted constitutional violation. So never before, not only would the court be pushing itself out of line of the Supreme Court and the circuits. Whatever they did, they weren't having underage girls used for sex. I'm sorry? Whatever they did, they weren't having underage girls used for sex. Whatever the officers did? Yes. I mean, it's wonderful to say how bad the officers were. How about your client? Well, I mean, look, there's always a crime underneath, you know, what brings you up here to the Court of Appeals, unless the court is saying, well, I'm not saying anything. I just think that to brush the officers as being bad people isn't the answer to the question. Nobody has to say that the officers are malicious. You know, this isn't a tort suit, and we're not talking about qualified immunity. The question is, were they erroneous? And that's a fine argument. That's a good argument. Yeah, and, you know, unless we're going to say that there's a serious felony exception, which isn't the law, then we have to look at the officers' conduct. And so the point that I'm making is not to condemn them as bad people, but to say that never before has the court said that when officers, in a premeditated way, commit constitutional violation after constitutional violation by the government's own admission in an area of the law that is unsettled, that that is good faith. That would make this court a significant outlier among the circuits. Thank you, counsel. You're beyond your time. Thank you both sides for the very helpful arguments. The case is submitted.
judges: Watford, Friedland, Motz